## City of Wabasha *vs.* Asahel D. Southworth.

Argued June 13, 1893.  Affirmed June 29, 1893.

**Duty of Owner to Keep in Repair a Trapdoor in Sidewalk.**

Where a cellar way, trapdoor, scuttle, or the like is put in a public side-walk for the convenience of the abutting property, as between the owner and the city, the duty of maintaining it in a safe condition devolves upon the former, and he cannot release himself of this duty by merely abandon-ing the use of the structure.  He can only do so by removing it and re-storing the sidewalk to its original condition.

**Owner is Liable to City for Damages It has to Pay to Traveler.**

If, through the negligence of the property owner, the structure becomes unsafe, and injury results, for which the city is liable because of neglect of its duty to keep its streets in a safe condition for travel, it may, upon payment of damages to the person injured, recover over from the owner by whose fault (as between him and it) the injury was occasioned.

**Procedure to Collect Such Damages.**

The mode of procedure provided by the charter of the city of Wabasha (Sp. Laws 1889, ch. 13, subch. 7, § 16) is not exclusive, but the city may pay the damages, without suit, and then recover over in an action against the property owner.

**Evidence of Owner's Negligence Considered.**

Evidence *held* sufficient to justify a finding that the defendant negligently suffered and permitted a trapdoor over a hatchway in a sidewalk to be-come decayed and insecurely supported so as to become unsafe for travel.

Appeal by defendant, Asahel D. Southworth, from a judgment of the District Court of Wabasha County, *Chas. M. Start*, J., entered February 10, 1893, for $1,432.91.

Prior to 1873, Dr. Remondino built the old Exchange Bank building fronting north onto Main Street in the City of Wabasha, and put a wooden trap-door in the plank sidewalk in front, for access to the cellar.  He put it in, as was usual, without applying for, or obtaining, license from the city.  In that year defendant purchased a half interest in the property, and, in 1880, purchased the other half.  Thereafter this trap-door was never used, and was nailed down.  In 1881, the bank was removed to new quarters, and the building was unoccupied much of the time.  On October 15, 1889, defendant rented, to C. J. Haines, and in June, 1890, to

Haines and A. J. Stone, the first floor of the building for a printing office, and they occupied it thereafter as his tenants. The trap-door in time decayed, but was not examined or repaired by the defendant or the city. On April 24, 1891, John Schinzel, a man weighing 250 lbs., in passing along the sidewalk, stepped onto this trap-door. It gave way, and he fell into the area below, and received serious injury, from which he died December 19th following. But on June 3, 1891, he brought an action against the city and Southworth jointly to recover $5,000 damages on account of their negligence in not keeping the sidewalk in safe condition. The city settled that action in November, without notice to Southworth, and paid to Schinzel and his attorney $1,277.65 in full settlement, and the action was dismissed. The city then brought this action against Southworth to recover of him the money so paid by it to Schinzel. A jury was waived, and the issues were tried in May, 1892. The court made findings and ordered judgment for the city. Defendant moved for a new trial, but was denied, and judgment was entered against him. From that judgment he appeals. His seventh assignment of error was, that the amount of the judgment against him in this action, included $150 paid by the city to Schinzel's attorney, for his services for Schinzel in his action against the city.

*J. F. McGovern* and *Gould & Snow*, for appellant.

For at least twelve years prior to the mishap, no use of the hatchway had been made by anybody, and for several years before that event the planks forming the cover were nailed fast at the ends to the stringers beneath, making them immovable and incorporating them permanently with the sidewalk.

The finding that defendant negligently suffered and permitted the hatchway and trap-door to be maintained in the street, is in the nature of a legal conclusion that the mere continuance or maintenance of a hatchway and cover, constitute negligence *per se*. The proposition seems clearly erroneous. It is equivalent to a decision that no owner of abutting property can maintain any means of ingress from the sidewalk to his cellar, without subjecting himself to a charge of negligence. If this were true, the effect would be to render wholly nugatory the right of an abutter to make reasonable use of the street when necessary to the beneficial enjoyment of

his private premises, and would virtually make all coal holes, areas and the like, illegal. *Fisher* v. *Thirkell*, 21 Mich. 1; *Ellsworth* v. *Lord*, 40 Minn. 337.

The only evidence of negligence on anybody's part is found, if at all, in the lack of close and careful inspection beneath the surface of the walk, since no defect was outwardly discernible, and the weakness resulted from hidden decay. Whether negligence, if any there was, in failing to keep the trap-door safe for travel, is to be imputed to Southworth, depends upon the question whether or not it had become incorporated with the sidewalk, so as to make the city solely responsible, within the ruling in *Noonan* v. *City of Still-water*, 33 Minn. 198.

There being no judgment in the former action by Schinzel against the city, there are three prerequisites to a recovery by the plaintiff in this action. It must appear: *First*. That the city was originally liable to Schinzel. *Fahey* v. *Harvard*, 62 Ill. 28. *Second*. That Southworth was also originally liable to Schinzel. *Third*. That the city, having voluntarily, and without consulting Southworth, made settlement with Schinzel, and procured a dismissal of the former action as to both defendants therein, has a right of recourse against Southworth.

Schinzel could not have held the city liable unless: *First*. The injury was proximately caused by a defect in the highway rendering it unsafe for ordinary travel. Dillon, Munic. Corp. (3d Ed.) § 1014. *Second*. Nor unless the city had previous reasonable notice, actual or constructive, of the defect. *Moore* v. *City of Minneapolis*, 19 Minn. 300, (Gil. 258;) *Hume* v. *Mayor of New York*, 47 N. Y. 639; *City of Fort Wayne* v. *De Witt*, 47 Ind. 396; *Fahey* v. *Harvard*, 62 Ill. 28; Dillon, Munic. Corp. §§ 1024, 1026, 1034. *Third*. Nor unless the city has been guilty of negligence after notice, in failing to remove the defect and make the walk safe.

As originally drawn, the complaint in this case distinctly denied notice, and impliedly denied negligence on the part of the city, by the allegation that "plaintiff had no knowledge at any time of the existence of the trap-door aperture, basement or cellar, or of their construction, arrangement or condition," and by attributing the accident solely to defendant's fault and neglect. At the trial plain-

tiff was permitted so to amend its complaint as to admit, in a left-handed way, that it had constructive notice of the defect, and was negligent in not applying a remedy. The court finds that the city had constructive notice of the alleged defect, but does not find that the city was negligent in failing to make timely repairs. On the contrary, the court apparently attributes the injury solely to the negligence of Southworth. Such being the state of the pleadings and findings on the question of the city's negligence, we are warranted in claiming that the chief essential to the liability of the city to Schinzel, and hence to the liability of Southworth to the city, is lacking, and that the court's conclusion of law in this case has, for this reason alone, no sufficient support.

The second question is, was Southworth originally liable to Schinzel? Southworth did not make the hatchway or its cover. nor cause either to be made. Personally he never used the passage-way nor directed or authorized anybody else to use it. For at least twelve years immediately prior to the date of the accident it had not been used by any one, and for at least eight years before that time the planks composing the so called trap-door were nailed fast to the stringers. There was at no time any maintenance of the hatchway by Southworth in any just sense of the term, if, indeed, he had any active consciousness of its existence. The utmost that can be charged is that he did not change the *status* existing when he first bought an interest in the abutting premises.

If cellarways beneath sidewalks are in themselves lawful, it follows logically that owners become liable in any case of faulty construction or disrepair of the same, only on the ground of negligence. In *Nichols* v. *Minneapolis*, 33 Minn. 430, the liability of the telephone company for injury caused by its wires, which had fallen upon the sidewalk, was distinctly placed upon this basis alone, while in *Landru* v. *Lund*, 38 Minn. 538, it is said only, that the defendant in that case would be liable for his tortious or negligent acts.

But supposing responsibility for the injury to Schinzel to rest upon any private individual, it does not rest upon Southworth, but upon his tenants, Haines & Stone. If either were liable, it would be the latter. The cellarway and cover not being *per se* a nuisance, and the duty of either owner or tenant in connection with them requiring only that care should be used to keep them safe, it is clear

that this duty was imposed upon the tenants alone. *Fisher* v. *Thirkell, supra; City of Lowell* v. *Spaulding,* 4 Cush. 277; *Clancy* v. *Byrne,* 56 N. Y. 129; *Johnson* v. *McMillan,* 69 Mich. 36.

The rule that the tenant in possession, not the landlord, is responsible in cases of this kind, is subject to but two exceptions: *First.* When the landlord has expressly contracted to make repairs. No such contract was shown in this case. *Second.* When the premises are rented with a nuisance or dangerous defect already upon them. Haines went into occupancy in October, 1889, and there is no evidence that the planking over the cellarway was in a dangerous condition at that time; hence there was then no nuisance or defect for which the landlord would be chargeable, and the second exception to the general rule does not obtain.

Under Sp. Laws 1889, ch. 7, § 16, p. 464, the Amended Charter of Wabasha, if Southworth were liable, Schinzel could not sue the city without making him also a party defendant. In case of judgment against both defendants, the city could not be called upon to pay it, until after execution had been issued against Southworth alone and returned unsatisfied, and if thereupon the city should pay the judgment, it would become owner of the same with power to collect it from Southworth by any of the usual proceedings. This section prescribes the form of procedure which may be resorted to in such cases, and we think this form is exclusive. *City of Faribault* v. *Misener,* 20 Minn. 396, (Gil. 347;) *State Bank of Duluth* v. *Heney,* 40 Minn. 145; *Raymond* v. *City of Sheboygan,* 70 Wis. 318; *Hiner* v. *City of Fond du Lac,* 71 Wis. 74.

The court below erred in allowing as a part of plaintiff's recovery, the sum of $150 paid by plaintiff as the fees of Schinzel's attorneys in the former action. Schinzel could not have recovered these fees in that action, either as damages or as costs. *Kelly* v. *Rogers,* 21 Minn. 146.

*J. W. Steele* and *Lloyd W. Bowers,* for respondent.

The testimony is ample to sustain the conclusion of fact that the method in which this hatchway and covering were constructed and left uninspected was negligent. It surely is not a proper exercise of care for the numerous and incessant travelers upon the principal street of a considerable city, for the owner of abutting premises,

who constructs a large and dangerous excavation under the sidewalk in the street for his own benefit, to cover such excavation only with a plank lid, and leave it for many years without inspection. The natural tendency, even of properly made structures, to decay, and fall out of repair, must be anticipated and guarded against. *Furnell* v. *City of St. Paul*, 20 Minn. 117, (Gil. 101.)

The finding stands admitted that the city might have known, by the exercise of ordinary care, of the unsafe condition of the sidewalk, in time to have repaired the same before April 24, 1891. The fact so found establishes the city's liability to Schinzel. The evidence also proved constructive notice to the city and consequent negligence of the city, as respects its duty to the public, including Schinzel.

Southworth's liability to Schinzel, upon the established facts, also rests upon plain principles. Any one of the following three rules makes such liability:

1st. Such a hole under the sidewalk and trap-door in the sidewalk, if made in the street without municipal permission, are a nuisance. *Congreve* v. *Smith*, 18 N. Y. 79; *Creed* v. *Hartmann*, 29 N. Y. 591; *Irvine* v. *Wood*, 51 N. Y. 224; *Pfau* v. *Reynolds*, 53 Ill. 212; Wood, Nuis. § 268 *et seq.*

2nd. Even if licensed by law or municipal consent, they are a nuisance if not kept safe for travelers over them. *Clifford* v. *Dam*, 81 N. Y. 52; *Chicago City* v. *Robbins*, 2 Black, 418; *Robbins* v. *Chicago City*, 4 Wall. 657; *Irvine* v. *Wood*, 51 N. Y. 224; *Village of Port Jervis* v. *First Nat. Bank*, 96 N. Y. 550; *Landru* v. *Lund*, 38 Minn. 538.

3rd. And, whether this hole and its cover were a nuisance or not, the duty rests upon a property owner who is licensed to maintain any structure or excavation in a street, to be diligent to keep it in safe condition. *Jennings* v. *Van Schaick*, 108 N. Y. 530; *Landru* v. *Lund*, 38 Minn. 538; *Village of Seneca Falls* v. *Zalinski*, 8 Hun, 571; Cooley, Torts, 626; Wood, Nuis. § 275.

4th. The following cases illustrate the liability of the property owner for unsafe structures maintained by him. *Stevenson* v. *Joy*, 152 Mass. 45; *Dickson* v. *Hollister*, 123 Pa. St. 421; *Barry* v. *Terkildsen*, 72 Cal. 254; *Bush* v. *Johnston*, 23 Pa. St. 209; *Severin* v.

*Eddy*, 52 Ill. 189; *Temperance Hall Ass'n* v. *Giles*, 33 N. J. Law, 260; *Williams* v. *Louisiana Electric Light & Power Co.*, 43 La. An. 295.

While some authorities, though not the better, or the larger number, dispute the first rule, all are agreed upon the second. There is no implied legal right to make or maintain an unsafe structure in a street. Appellant attempts, very faint-heartedly, to claim that *Noonan* v. *City of Stillwater*, 33 Minn. 198, governs here. The distinction is too simple for argument, and is made by *Landru* v. *Lund*, *supra*.

Appellant claims that he abandoned this hatchway and door, and that after he did so it was no concern of his. The answers are several: 1st. There is no finding of any abandonment. On the contrary, the trial court found continuance and maintenance of the hatchway and its cover by Southworth from 1880 on. 2nd. Any claim of abandonment is absurd. It is a pure case of a man's claiming the legal right to "abandon" his legal duties. He could not by disuse free himself from the continuing duty of keeping the trap-door in a safe condition for public travel. If he had no further use for the hatchway, and wished to abandon it, the only way he could relieve himself from the duty of keeping it safe would be to restore the street and sidewalk to their original condition by filling up the hatchway and replacing the stringers in the sidewalk. 3rd. The hole and its cover were a single thing, and as long as the hole was continued, the cover alone surely could not be disowned. 4th. The claim of abandonment is disposed of by the case of *Nichols* v. *City of Minneapolis*, 33 Minn. 430.

If the hole and cover were a nuisance, as they certainly were, then it is immaterial who occupied at the time of the accident; and it is equally immaterial if the hole and cover were dangerous. *Timlin* v. *Standard Oil Co.*, 126 N. Y. 514; *Davenport* v. *Ruckman*, 37 N. Y. 568; Wood, Nuis. 77, 78. Southworth leased to Haines on October 15, 1889, for one year. When this lease expired in October, 1890, Haines and Stone formed a partnership and the partnership thereafter occupied as Southworth's tenant. Therefore, Southworth rented these premises anew on October 15, 1889, to Haines, and on October 15, 1890, to the new firm of Haines & Stone. At both these times the cellarway and cover were nuisances, because

unsafe from lack of repair, and were dangerous structures, by rea-
son of the negligence of defendant, who maintained them without
proper reconstruction or proper repair. The evidence also showed
that defendant, and not his tenants, were to make repairs.

There is not the slightest evidence that the lease to Haines or
that to Haines & Stone included this hatchway. The lease was of
the "first floor of the building for a printing office." The tenants of
the first floor neither had, nor made, any use of the cellar or cellar-
way. The burden was on defendant to show that the lease included
the cellar and cellarway, and, though it must have been within his
own knowledge, he did not do it.

The city, having been obliged to pay for Schinzel's injuries
through the fault of Southworth, as between him and it, is entitled
to recover the money so paid. *Chicago City* v. *Robbins*, 2 Black, 418;
*Robbins* v. *Chicago City*, 4 Wall. 657; *Calder* v. *Smalley*, 66 Iowa,
219; *Village of Port Jervis* v. *First Nat. Bank*, 96 N. Y. 550; *City
of Rochester* v. *Campbell*, 123 N. Y. 405; *City of Rochester* v. *Mont-
gomery*, 72 N. Y. 65; *Village of Seneca Falls* v. *Zalinski*, 8 Hun,
571; *Lowell* v. *Boston & Lowell R. Co.*, 23 Pick. 24; *City of Lowell*
v. *Short*, 4 Cush. 275; *Inhabitants of Stoughton* v. *Porter*, 13 Allen,
191; *West Boylston* v. *Mason*, 102 Mass. 341; *City of Portland* v.
*Richardson*, 54 Me. 46; 2 Dillon, Munic. Corp. (3d Ed.) §§ 1027,
1032, 1033, 1035; Cooley, Torts, 626; Elliott, Roads and Streets,
640 *et seq.*

The parties (Southworth and city) are not *in pari delicto*. *City
of Brooklyn* v. *Brooklyn City R. Co.*, 47 N. Y. 475; *City of Detroit*
v. *Chaffee*, 70 Mich. 80; *Borough of Brookville* v. *Arthurs*, 130 Pa. St.
501; *City of Portland* v. *Richardson*, 54 Me. 46; *West Boylston*
v. *Mason*, 102 Mass. 431; *Lowell* v. *Boston & Lowell R. Co.*, 23
Pick. 24.

It is contended that the city's only remedy was to let Schinzel
go to judgment against it and Southworth under Charter, Sp. Laws
1889, ch. 13, subch. 7, § 16, and to then pay the judgment and en-
force it against Southworth. The cases cited by defendant do
not touch this question. The statute excludes any other mode
of procedure by the injured person against the city, but there is
nothing to restrict the city's own method of procedure. On the

contrary, the statute is intended to help, not to hinder, the city in dealing with such claims. *Jones* v. *City of Minneapolis,* 31 Minn. 230; *Clark* v. *City of Austin,* 38 Minn. 487.

MITCHELL, J. If the findings of fact were justified by the evidence, there is nothing new or doubtful in the law governing this case.

In order to entitle the plaintiff to recourse on the defendant for the money which it had paid in settlement of the claim of Schinzel for injuries sustained by reason of the defective sidewalk, it was necessary to establish—*First,* that the city was liable to Schinzel by reason of negligence in the performance of its duty to the public to keep its streets in safe condition, and, *second,* that defendant was also liable to Schinzel by reason of his negligence in constructing or maintaining the nuisance in the street which caused the injury. If these two facts were established, then the right of the city to recourse against the defendant is not, and could not successfully be, denied.

There is nothing in the point that the mode of procedure prescribed by the city charter (Sp. Laws 1889, ch. 13, subch. 7, § 16) is exclusive, and that the city's only remedy was to let the claim of Schinzel go to judgment against both it and Southworth, pay the judgment, and then enforce it against Southworth. This, like similar provisions in other charters, is designed to aid and not to hinder cities in dealing with such claims, so that the liability of a third party may be determined and enforced in the same action in which that of the city is determined and enforced. The only effect of the city's settling the claim without such judgment was that the questions upon which the liability of Southworth depends were left open. See *Jones* v. *City of Minneapolis,* 31 Minn. 230, (17 N. W. Rep. 377;) *Clark* v. *City of Austin,* 38 Minn. 487, (38 N. W. Rep. 615;) *Minneapolis Mill Co.* v. *Wheeler,* 31 Minn. 121, (16 N. W. Rep. 698.)

The court found that the city might, by the exercise of ordinary care, have known of the unsafe condition of the sidewalk in time to repair it before the accident occurred. This finding, which is not assailed, settles the question of the city's liability to Schinzel.

Passing over the finding to the effect that this hatchway in

the sidewalk was originally constructed in a negligent and unsafe manner, (which we think was justified by the evidence,) the court further found that the defendant knew, or by the exercise of ordinary care might have known, of the existence and character of this hatchway and covering at the time he purchased the property; also, that for more than a year prior to the accident he had negligently suffered and permitted this covering or trapdoor over the hatchway to become decayed and insecurely fastened and supported, whereby the sidewalk over the excavation underneath became and was unsafe for ordinary travel. That the first part of this finding was supported by the evidence is beyond question. Indeed, we think the evidence was such as to require a finding that defendant had actual knowledge of the existence and character of this hatchway as long ago as the date of his purchase of the undivided half of the abutting property in 1873. Nor in our opinion is there any more room for doubt as to the sufficiency of the evidence to justify the latter part of the finding. The defendant maintained this hatchway in the street by allowing it to remain there, with knowledge of its existence. The fact that he had not used it for some years is immaterial, and the claim that he had relieved himself from responsibility by abandoning it is without merit. Having been constructed in the street for the convenience of his abutting property, the only way he could relieve himself from the duty of keeping it in repair was to restore the street to its original condition by filling up the excavation and replacing the stringers under the sidewalk. *Nichols* v. *City of Minneapolis*, 33 Minn. 430, (23 N. W. Rep. 868.)

The negligence of the defendant in the maintenance of this hatchway or cellar way we place upon his lack of ordinary care in not taking reasonable precautions to keep it in safe condition, and not upon the ground that all excavations, basement or cellar ways, scuttles, and the like, made or constructed in the street without affirmative municipal license, are *per se* unlawful, and nuisances. Numerous reported cases, both in this country and England, show that it has been assumed, time out of mind, in accordance with a custom of long standing, that, even in the absence of any express license, this is a legitimate use of the street for the convenience of abutting property, provided it be exercised in a proper

and safe manner, and consequently that the property owner is not an absolute insurer against all injuries resulting from the existence of such things in the street, but is only responsible for negligence or want of reasonable care in their construction or maintenance. This we deem the correct view of the law on this subject. See *Fisher* v. *Thirkell*, 21 Mich. 1.

But such structures having been placed in the street for the convenience of the abutting property, it stands to reason that, as between the property owner and the city, the duty of maintaining them in a safe condition devolves on the former. Defendant was bound, in the exercise of ordinary care, to take notice of the fact that wood will decay. *Landru* v. *Lund*, 38 Minn. 538, (38 N. W. Rep. 699.) The fact that the planks forming the cover of this hatchway showed no signs of decay on the upper side did not justify the defendant in assuming, without inspection, that they and the stringers on which they rested had not, in the eighteen years or more that they had been there, become rotten underneath, where they were excluded from the sun and subjected to moisture. Leaving these planks, which were a part of a public sidewalk, over an excavation five or six feet deep, with the middle stringers of the sidewalk cut away, the only support of the planks being at the two ends, the support at the inner end next the building being only about an inch in width of a perishable wooden stringer, and failing to inspect them for all these years, to ascertain their condition, constituted a state of facts that abundantly justified the court in finding that defendant was guilty of negligence.

The defendant, however, sought to escape liability by attempting to show that he had rented the premises to certain tenants, and that they, and not he, were responsible for the maintenance of this hatchway and cover; and the refusal of the court to make a finding as to the possession and occupancy of the premises by these tenants before and at the time of the accident is assigned as error.

Without considering the points that the pleadings raised no such issue, and that according to the findings of the court this cover to the hatchway was already in an unsafe condition before the date of the lease to the tenants, it is enough to say that there was not a particle of evidence that the lease included the cellar or the hatchway.

There is no merit in defendant's seventh assignment of error. Of course, the city was not liable to Schinzel for his attorneys' fees as such, but the $150 in this case was paid to his attorneys as part of the amount which the city had agreed with him to pay in settlement of his claim against it for damages. In legal effect, it was paid to Schinzel, and as long as it was paid for his benefit, and in settlement of his claim against the city, it was wholly immaterial to whom the money was actually paid over; the aggregate amount paid out in all being within the amount for which the city and the defendant were liable to him.

As we do not discover any error in the record, the judgment appealed from must be affirmed.

(Opinion published 55 N. W. Rep. 818.)